(No. 14208.—Judgment affirmed.)

EDWARD WALSH, Defendant in Error, *vs.* THE CHICAGO RAILWAYS COMPANY *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1922.*

1. NEGLIGENCE—*court will not weigh conflicting evidence on motion to direct a verdict.* On motion to direct a verdict the court will not weigh conflicting evidence but will merely inquire whether there is any evidence in the case tending to support the verdict.

2. SAME—*expert witness may be permitted to state that hernia was due to injury to the abdomen.* In a personal injury case an expert witness who made an examination of the plaintiff may be permitted to state that the hernia from which the plaintiff is suffering is due to an injury to the abdomen, where neither the question asked nor the answer given indicates that the hernia was caused by the injury alleged to have been received.

3. SAME—*whether injuries shall be exhibited to jury rests in discretion of court.* Whether injuries to the person shall be shown to the jury rests largely in the discretion of the trial court, and when the question is as to the extent of the wound or injury, it is the common practice to exhibit it to the jury so they may see for themselves its nature and extent.

4. SAME—*when instruction as to what may be considered in arriving at damages is proper.* In a personal injury case an instruction that the jury may take into consideration all the facts proved by the evidence, including "the nature and extent of plaintiff's physical injuries, if any, so far as the same are shown by the evidence; his suffering in body and mind, if any, resulting from said physical injuries; and such future suffering and loss of health, if any, as you may believe from the evidence," etc., is not improper in not requiring the jury to first find that the injury was caused by the negligence of the defendant, where such requirement is covered by another instruction.

5. SAME—*instruction that jury are to "be governed solely by the evidence" is not improper.* An instruction that the jury, in determining questions of fact, are to "be governed solely by the · evidence" is not improper as permitting them to disregard the law in the case, where other instructions tell the jury they are to be governed by instructions of the court as well as by the evidence.

6. SAME—*when instruction is not prejudicial to defendant street railway company.* In an action against a street railway company for personal injuries to a pedestrian, an instruction that "the law does not give a street car company the right to the exclusive use

of the part of the street occupied by the street car tracks, but the street car company is required by law to operate its cars over its tracks with a due regard to the rights of the public in the use of the street," states a correct rule of law and cannot be regarded as prejudicial to the defendant.

7. EVIDENCE—*when witness may refresh his recollection from another's writing.* It is not necessary that the writing used by a witness to refresh his recollection be made by the witness himself or that it be itself admissible in evidence, provided that after inspecting the writing the witness is able to speak of the facts from his own recollection.

8. TRIAL—*argument should not be unreasonably restricted.* Attorneys, in arguing cases to the jury, must be allowed to make reasonable comments upon the evidence, and public justice requires that counsel should not be subjected to unreasonable restrictions in this regard.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

HARRY P. WEBER, GEORGE W. MILLER, ARTHUR J. DONOVAN, and ARTHUR A. ANDERSON, (JOHN R. GUILLIAMS, and CHARLES L. MAHONY, of counsel,) for plaintiffs in error.

CHARLES C. SPENCER, and ARTHUR A. HOUSE, (NATHAN E. UTT, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error, Edward Walsh, brought an action for personal injury against plaintiffs in error, the Chicago Railways Company and the Chicago City Railway Company, in the circuit court of Cook county, and after a trial the jury returned a verdict in his favor, on which judgment was entered for $2500. The case was taken to the Appellate Court, where the judgment of the trial court was affirmed, and the cause has been brought here for further consideration on petition for *certiorari.*

Defendant in error, Walsh, a Chicago policeman in uniform, about 12:30 in the morning of September 1, 1916, was on his way to call his family physician for his son, who was very sick, and arriving at the intersection of North and Western avenues he was told by a citizen that a spare tire and wheel had been stolen from the rear end of an automobile then standing near the street intersection. Walsh, on examining the automobile to ascertain how the extra tire and wheel had been removed, passed around the rear of the automobile on the north and then on the east side, and stood, according to the evidence for defendant in error, with his right foot on the running-board and his left foot on the ground. The evidence on the part of Walsh tends to show that a street car of the Chicago Railways Company, without headlight burning and without giving any signal, approached from the north, and that when the car was close to Walsh the motorman opened the door, which, the testimony of defendant in error tends to show, let down the step, and Walsh was struck by the step on the left leg, thrown against the body of the automobile and then forward upon his stomach and rendered unconscious. Several people were gathered around the automobile at the time of the accident, and some of them placed Walsh in the automobile and he was taken to the police station and then home, where he was treated by Dr. Weil. The testimony of Walsh, as well as that of the doctor, was to the effect that he suffered with severe abdominal pains, and that about the third week after the accident an umbilical hernia appeared.

Walsh himself testified that he was thirty-eight years old and weighed about 240 pounds; that when injured he was standing, facing the automobile to the west and his left leg a little to the rear of his right leg, writing down memoranda as to the stealing; that as he bent over to look at the automobile he stood about two feet from the car track; that the step of the car hit him on the left leg near

the calf, and then the body of the car hit him and he was thrown forward on the pavement. He testified that he did not know the car was approaching before it hit him and did not hear any bell or see any light on it; that he was rendered unconscious and when he came to was sitting in an automobile.

Dr. Weil, who was at the street crossing at the time and saw the accident, testified that he lived in the neighborhood but had not known Walsh before; that he had just alighted from a North avenue car and was waiting for a Western avenue car; that after examining Walsh slightly at the place of the accident he afterwards went to his home, where he treated him; that later, when he saw that hernia had developed, he advised him to wear a belt; that he treated Walsh every month after the accident for about a year; that at the time of the trial Walsh had a fully developed umbilical hernia; that the hernia might be cured by an operation, but that such operations were not always successful; that the injury to the leg caused by the accident was practically completely cured in about a week. Several of the bystanders who saw the accident testified substantially to the same effect as did Walsh and Dr. Weil as to its causes and the circumstances surrounding it.

The motorman on the street car at the time of the accident was not working for the railway company but for the Crane Company at the time of the hearing in the circuit court. He testified that the headlight of the street car was burning when the car left the barns; that cars coming south on Western avenue always stop at North avenue because there is an intersecting street car line there; that when his car neared the intersection he noticed an automobile at the side of the curb, near the crosswalk, by which a couple of people were standing; that he first noticed the automobile when his car was at the elevated track, about a hundred feet north of North avenue; that he rang the bell several times right under the elevated structure; that when Walsh was

hit the car was running about four miles an hour and ran about four feet before it stopped; that the car was one of the pay-as-you-enter type. The testimony for the plaintiffs in error was to the effect that the step was stationary. The motorman testified that he saw Walsh standing near the rear of the automobile, which was facing south, and judged the automobile to be about five feet from the track; that witness thought his car had a lot of clearance, and that just as he was about to pass the automobile Walsh stepped right back,—maybe two steps,—and the front step hit his leg. On cross-examination this witness testified that he always rang his bell when he came to a crossing; that he rang it four or five times while approaching North avenue on that occasion. The person who was conductor at the time of the accident testified that he was standing at the rear of the car and did not see what happened.

There are some arguments in the briefs of plaintiffs in error to the effect that the testimony does not show that Walsh was standing with his right foot on the running-board of the automobile at the time of the accident, and counsel for plaintiffs in error also seem to argue that the evidence is to the effect that Walsh stepped out from the rear of the automobile just before he was hit. While defendant in error himself did not testify directly that he was standing with his right foot on the running-board of the automobile, at least the testimony of two witnesses who testified in his behalf was to the effect that he stood in that position at the time of the accident, and his evidence, as well as all the evidence in the record, was to the effect that he was standing on the side of the automobile nearest the street car, leaning over towards the automobile and taking memoranda as to the things that were stolen, at the time he was injured.

On behalf of plaintiffs in error three doctors testified as experts, in answer to hypothetical questions, that in their opinion the hernia could not have been caused by the ac-

cident. Dr. Leeming, one of these physicians, gave as a reason that if the hernia was suddenly brought on by violence it would be a case which would require the patient to be carried away on a stretcher. These doctors also testified that such a hernia might be curable by operation; that the operation was successful in the majority of cases, and though a serious and sometimes dangerous one to the individual was not a very serious operation surgically speaking. Two doctors besides Dr. Weil testified for Walsh as to his condition, Dr. Wallin stating that he examined Walsh on September 21, 1916, at his home, and found that he was suffering from a contusion on the left leg and showing evidence of an umbilical hernia.

It is first argued by counsel for plaintiffs in error that the trial court erred in not giving an instruction to direct a verdict in favor of the railway companies. This court has laid down the rule that on motion to direct a verdict the court will not weigh conflicting evidence but merely inquire whether there is any evidence in the case tending to support the verdict. (*Kelly* v. *Chicago City Railway Co.* 283 Ill. 640.) On the evidence given on behalf of defendant in error, without question the trial court did not err in refusing to direct a verdict in favor of plaintiffs in error.

It is strongly urged that the evidence does not justify the finding of the jury; that the verdict must necessarily be based on the conclusion that the hernia was the result of the accident. On the record before us there was evidence on which to base the jury's finding that the hernia was the result of the accident.

It is further objected by counsel for plaintiffs in error that the circuit court erred in permitting Dr. Weil to state, in answer to a question put to him, that the hernia was caused by an injury to the abdomen. The question asked or the answer made did not in any way specify whether the hernia was caused by this accident or by some other injury. That question was left to be decided by the jury.

Under the reasoning of this court in *Chicago Union Traction Co.* v. *Roberts*, 229 Ill. 481, and *Lyons* v. *Chicago City Railway Co.* 258 id. 75, we do not think any error was made by the ruling of the circuit court in this regard.

It is urged that the trial court erred in overruling a motion to exclude the testimony of Dr. Smith, who testified in behalf of defendant in error, that he had been examining physician for certain insurance companies and in the course of that work had examined Walsh in May, 1914, and that Walsh did not then have a hernia. On cross-examination of this witness it was shown that he had no independent recollection of so examining Walsh; that to refresh his recollection he had read memoranda kept by the company, a part of which he himself had made. It is objected that all of the memoranda was not made by Dr. Smith himself and therefore he should not have been permitted to refresh his recollection therefrom. It has been held by this court, in accordance with standard authorities, that it was not necessary that the writing used by the witness to refresh his recollection should have been made by the witness himself or that it should have been his original writing, provided that after inspecting the record he could speak of the facts from his own recollection. Neither is it necessary that the writing thus used should itself be admissible in evidence. (*Scovill Manf. Co.* v. *Cassidy*, 275 Ill. 462. See to the same effect, 1 Greenleaf on Evidence,—15th ed.—sec. 436; Jones on Evidence,—2d ed.—secs. 877, 878.) It is obvious from a reading of Dr. Smith's testimony that he was testifying as to his recollection as to Walsh's condition in May, 1914, after refreshing his recollection from the memoranda made at the time and kept by the company. Moreover, the main point urged in support of the motion to strike Dr. Smith's testimony is as to Walsh having hernia at that date. The other evidence in the record fully supports the conclusion that Walsh had no symptoms of hernia before the accident, and we do not see how any error, if

such there was, in admitting Dr. Smith's testimony in this regard could have been injurious to plaintiffs in error.

Plaintiffs in error urge also in this connection that error was committed on the trial of the case in allowing Walsh to exhibit the umbilical hernia; that this exhibition of his person could have had no other result than to arouse the prejudice of the jury; that counsel for plaintiffs in error did not deny on the trial that Walsh had a hernia. The record shows that when this offer was made as to showing the umbilical hernia the attorney for Walsh asked one of the attorneys for plaintiffs in error if he conceded that Walsh had a hernia, and counsel answered, "I don't concede anything." In view of the character of the injury and the question whether it was caused by the accident, as the jury found, we are of the opinion that it cannot be fairly held that in allowing damages of $2500 the jury were influenced by passion or prejudice. On the trial of a case, the question whether the injuries to the person shall be shown to the jury is left largely to the discretion of the trial court. When the question is as to the extent of the wound or injury it is the common practice to exhibit it to the jury, so they may see for themselves its nature and extent. (*Springer* v. *City of Chicago,* 135 Ill. 552; *City of Lanark* v. *Dougherty,* 153 id. 163.) We find no error committed by the trial court in its ruling on this point.

Counsel for plaintiffs in error further insist that error was committed in the giving of several instructions to the jury on behalf of the defendant in error, especially instruction 15. First, in their original brief, they seem to object because this instruction states that the jury could take into consideration "all the facts and circumstances attending the injury as proven by the evidence before you,—the nature and extent of plaintiff's physical injuries, if any, so far as the same are shown by the evidence; his suffering in body and mind, if any, resulting from said physical injuries; and such future suffering and loss of health, if any, as you may

believe from the evidence before you in this case." Reading all their briefs together, we conclude that their chief objection to this instruction is that it did not require the jury to find that the hernia was caused by the accident before allowing damages for the various elements recited therein. It would be difficult to assume from the reading of this instruction, alone, that the jury would fail to understand clearly that any damages they might decide to allow Walsh were to be for an injury received by him through being hit by the street car. How any fairly intelligent juryman could come to any other conclusion from this instruction we cannot understand. It is a familiar rule of this court that instructions must be considered as a series, and while instruction 15 did not state in specific terms that the injury must be shown by the evidence to have been caused by this accident, instruction 5 given for defendant in error did say specifically that the jury should find plaintiffs in error guilty if they believed from the evidence that Walsh was injured by or in consequence of the negligence of the plaintiffs in error, as charged in the declaration, that such negligence was the direct and proximate cause of the injury, and that Walsh was in the exercise of ordinary care before and at the time he was injured. In *Chicago City Railway Co.* v. *Taylor,* 170 Ill. 49, an instruction worded substantially as instruction 15 here objected to, was approved by the court, and the same rule on this question was practically approved by this court in later decisions. (*Cicero Street Railway Co.* v. *Brown,* 193 Ill. 274; *Chicago Terminal Railroad Co.* v. *Gruss,* 200 id. 195.) In view of the former holdings of this court with reference to similar instructions, and the wording of this instruction, the objection of counsel for plaintiffs in error as to the misleading effect of this instruction on the point in question seems to us not to be well taken.

Counsel for plaintiffs in error also object to the giving of instruction 7 for defendant in error because they claim

that in effect it authorized a recovery for mental injury, which they argue is very different from an instruction specifying mental suffering resulting from physical injuries. We do not think this point urged by counsel for plaintiffs in error is meritorious. In *Chicago City Railway Co.* v. *Taylor, supra,* the court, in discussing a similar instruction, said (p. 56) : "The instruction complained of in substance directed the jury that in determining the amount of damages which the plaintiff is entitled to recover, the jury have the right to, and should, take into consideration the permanent disability, if any, caused by said injuries, and any future bodily and mental pain or suffering, if any, that the jury may believe, from the evidence, plaintiff will sustain by reason of injuries received," and it was held that the instruction was not erroneous, as authorizing a recovery for future mental pain or suffering. In our judgment the reasoning of the court in that case is a complete answer to plaintiffs in error's argument on the alleged objectionable features of instruction 7 given in this case.

Counsel for plaintiffs in error object to the giving of instruction 8 for defendant in error, which states among other things : "In determining any of the questions of fact presented in this case, you should be governed solely by the evidence. You have no right to indulge in conjectures or speculations not supported by the evidence." Counsel urge that this instruction limits the jury to the consideration of the evidence, alone, and that they should have been told that they should be controlled by the law as well as by the evidence. Several of the instructions given to the jury, particularly instruction 11 for plaintiffs in error, told the jury that they were to be governed by the instructions of the court as well as by the evidence, and that they were the sole judges of all questions of fact, and that the court did not by any of the instructions intend to state to them how they should find on any question of fact.

It is also objected that the court erred in giving instruction 9 for defendant in error, which reads:

"You are instructed that the only care and caution required of Edward G. Walsh was such conduct and care and caution for his own safety as a reasonably prudent and cautious person would have exercised under the same or like conditions and circumstances which surrounded him before and at the time of the alleged accident. He was not required to exercise extraordinary care or diligence."

Plaintiffs in error urge that the last sentence practically destroyed the rest of the instruction. This court said with reference to a similar criticism of an instruction in *West Chicago Street Railroad Co.* v. *McNulty,* 166 Ill. 203, on page 205 : "The obvious and unmistakable meaning of the instruction is, that all the care required of the plaintiff was ordinary care, which is such a degree of care as ordinarily careful persons would exercise under similar circumstances." The same may be said with reference to the criticism here of instruction 9.

Counsel further argue that the court erred in giving instruction 13 for defendant in error, which reads:

"The law does not give a street car company the right to the exclusive use of the part of the street occupied by the street car tracks, but the street car company is required by law to operate its cars over its tracks with a due regard to the rights of the public in the use of the street."

It is argued that this instruction as worded, by innuendo would prejudice the jury against the company. This instruction laid down a correct rule of law with reference to the rights of a street car company in the use of the streets, and we cannot see how it would have prejudiced plaintiffs in error, as urged by their counsel.

Other instructions are objected to, but we do not find that the court seriously erred as to any of them and will not discuss them in detail.

Counsel for plaintiffs in error strenuously argue that reversible error was committed in permitting certain statements to be made by counsel for Walsh in his closing argument to the jury, over their objection, in which he referred sharply to the character of the expert testimony given in behalf of plaintiffs in error. Counsel for Walsh, while apparently conceding that these remarks as to the expert witnesses should not have been made, argue that counsel was at least partly justified in making them because of the statement made by counsel for plaintiffs in error in his opening argument to the jury regarding the testimony of Dr. Weil, a witness for Walsh. In referring to Dr. Weil's testimony as to the hernia being caused by the accident, counsel for plaintiffs in error said: "It depends entirely upon Weil,—the ubiquitous Weil,—who is present to look at the accident and who goes and attends to the case. Yes. He apparently didn't know enough medicine to know that he ought to have got this all black and blue, or something, in order to associate it with a hernia. Now, just take his testimony, if you will. When it is claimed by an eye-witness like Weil that this was a traumatic hernia, and when—I was going to argue that Weil wasn't telling the truth even about the light on the car. I thought I would call these doctors from different walks to tell you that Weil wasn't telling the truth about that any more than he is about the occurrence. I called Dr. Leeming.  *  *  *  My contention is that this hernia has no connection whatever with this accident." Counsel for Walsh claims that it was in answer to this argument of counsel for plaintiffs in error that he said in his closing address to the jury: "Now let us take Dr. Weil, whom counsel doesn't like because he attempts to cure people this street car company injures. He is not a Tenney or Leeming, to be sure; had all of these hospitals and colleges and universities on their tongues' end, and who are devoting their time, the evidence shows, at least to a great extent, not to curing sick people, as Dr. Weil

is, but swearing away their rights," etc. The testimony of Dr. Leeming given on the hearing shows that he gave a great deal of his time to the work of the street car companies and in advising with their doctors with reference to accident cases. This court has said more than once, that in arguing cases to the jury attorneys must be allowed to make reasonable comments upon the evidence. The interest of public justice requires that counsel should not be subjected to unreasonable restrictions in this regard. (*Illinois Central Railroad Co.* v. *Beebe,* 174 Ill. 13; *Chicago City Railway Co.* v. *Creech,* 207 id. 400.) Whether or not an objection should be sustained to remarks made in argument by an attorney in the trial of a case and whether his objectionable remarks should be held to be error may depend upon the preceding argument of opposing counsel. In *Plambeck* v. *Chicago Railways Co.* 294 Ill. 302, this court said in commenting on this question (p. 308) : "We are influenced somewhat in our conclusion by the further fact that the foregoing argument complained of was in answer to remarks of plaintiffs in error's counsel that were not altogether legitimate and proper." Obviously the remarks objected to by counsel for the plaintiffs in error regarding Dr. Leeming and Dr. Tenney were called out by counsel's statement referring to Dr. Weil. While neither counsel should have made the remarks with reference to the expert witnesses that were made during their arguments to the jury, we are not prepared to say that reversible error was committed in the argument of counsel for defendant in error by making the remarks with reference to Dr. Leeming and Dr. Tenney.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*