THOMAS REGAN, Plaintiff-Appellant, *v.* SAMUEL VIZZA, Defendant-Appellee.

First District (4th Division)   No. 76-1424

Opinion filed October 5, 1978.

Sandman, Levy & Moltz, of Chicago, and Smith & Teichman, Ltd., of Park Ridge (Donald P. Smith, of counsel), for appellant.

Hoffman, Burke & Hoffman, of Chicago (Gary W. Bozick, Joseph E. Burke, and Edmund J. Burke, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The plaintiff, Thomas Regan, brought this action in the Law Division of the Circuit Court of Cook County against defendant, Samuel Vizza, for injuries sustained when his vehicle was struck from the rear by the vehicle operated by defendant. Defendant admitted liability and the jury returned a verdict of $98.50 in favor of plaintiff. Plaintiff filed a post-trial motion for a new trial, based upon the inadequacy of the verdict and the alleged prejudice engendered by the conduct of the defense attorney throughout the course of the trial. The trial court denied plaintiff's post-trial motion. Plaintiff appeals, and we reverse.

Plaintiff testified that on October 24, 1971, while he was stopped in traffic the vehicle he was driving was hit from the rear by the vehicle operated by defendant. At the moment of impact, plaintiff was bent down to the right to pick up a music tape from the floor of the passenger side of the front seat of the vehicle. Plaintiff characterized the force of the

impact as medium and testified that he went back, then forward, hitting the steering wheel and side handle of the door.

Plaintiff testified that in his initial conversation with defendant after the accident, he told him he felt like he was hurt. Plaintiff called his brother-in-law, Bob Simenas, who took him to Holy Cross Hospital where he was X-rayed and examined by a physician who prescribed a rib belt and referred plaintiff to Dr. William McDonald, an orthopedic surgeon.

Plaintiff testified that he was nervous and suffered discomfort in his side and back for several weeks following the occurrence. During this period, he saw Dr. McDonald who prescribed a back brace to be worn for 1 week. Although he received no further medical attention, he continued to have neck pains for 6 months and pains in his side and chest for 1 year following the accident.

Plaintiff presented evidence of the cost of his medical care which included an emergency care bill for $63, a hospital bill for $18, radiologist's bills totaling $29, and a bill from Dr. McDonald in the amount of $265.

At the time of the accident, plaintiff was employed as a salesperson at a department store where his duties included slight stock work. Plaintiff lost several weeks from work as a result of the accident. His pay was $2.35 per hour for a 40-hour week.

Dr. McDonald testified that he is a licensed physician and surgeon in Illinois, specializing in orthopedics. He graduated from Loyola University Medical School in 1942 and was licensed to practice medicine in 1945. He is senior surgeon consultant in fractures and orthopedics at Holy Cross Hospital in Chicago, Illinois. On cross-examination, he testified that he is not board certified. He explained that board-certified orthopedic surgeons are a society of doctors who do bone work and who meet regularly to present papers and have discussions. He attends some of the meetings. He has previously testified for the law firm representing plaintiffs in other personal injury cases. Included in the bill sent to plaintiff for medical care was his charge of $35 for medical and legal reports.

In closing argument, plaintiff's attorney retabulated plaintiff's special damages to be approximately $680. He summarized plaintiff's pain, discomfort, and disability, and asked for a verdict of $4000.

Defendant testified that he was driving at 5 miles per hour when he struck the rear of plaintiff's vehicle. He stated that plaintiff insisted he was not hurt until his brother-in-law arrived at the scene of the accident. He testified that plaintiff told him he wished to call his brother-in-law who had a case pending because he knew about conditions when there is an accident, and plaintiff was going to call him to see what he was supposed to do.

In the record, a portion of defense counsel's closing argument appears as follows:

"Mr. Bozick [defense counsel]: I think you folks can draw a similarity with Dr. MacDonald [*sic*] and a hired gun in the old West.

Mr. Bell [plaintiff's counsel]: I'll object to that characterization of the doctor.

Mr. Bozick: Fair comment. I have evidence, Your Honor.

The Court: Go ahead.

Mr. Bozick: As a matter of fact, I think you might remember there was a T.V. program with a guy named Paladin whose card read, 'Have Gun Will Travel.'

Mr. Bell: Your Honor, I'll renew my objections.

Mr. Bozick: Dr. MacDonald's [*sic*] is 'Have medical testimony will travel.'

Mr. Bell: Let me renew my—

The Court: Let it stand counsel."

The plaintiff's brief refers to other remarks made by defense counsel which appear in the record but they need not be set forth here.

The two questions for consideration are (1) whether the defense counsel's comments in closing argument constituted error sufficient to grant a new trial and (2) whether the verdict of $98.50 was sufficiently inadequate to grant a new trial.

■■ "A trial properly conducted is a dignified procedure. Counsel in the case are officers of the court and owe a duty to the court, to opposing counsel, to the cause of justice and to themselves." (*Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 711, 346 N.E.2d 448, 449.) An attorney in his final argument is permitted only to make reasonable comments upon evidence. (*Cecil*, at 712.) It is not improper for an attorney to question either the credibility or judgment of a witness upon any legitimate ground, but an attorney has no right to indulge in violent or inflammatory language for the purpose of arousing the prejudice and passions of the jury nor to insult or abuse a witness without cause. *Chicago & Alton R.R. Co. v. Scott* (1908), 232 Ill. 419, 422, 83 N.E. 938, 939.

In *Cecil*, the defense counsel in his closing argument referred to plaintiff's attorney as a "slick attorney from Chicago" and a "slick hired-hand," and called plaintiff's medical expert witness a "sidekick" and a "righthand man." Defense counsel further compared the relationship between plaintiff's counsel and his expert witness to that existing between the "Cisco Kid and Poncho" and "Matt Dillon and Chester." The court stated, "the defense counsel's final argument clearly exceeded all bounds" and held that the closing argument contained such erroneous and grossly prejudicial statements that plaintiff's chances for a fair and impartial trial were denied. *Cecil*, at 711-12.

■■ In the instant case, defense counsel was not justified in his comparison

of Dr. McDonald, a medical witness in the case, to Paladin, a T.V. character who was a hired gun in the Old West. The testimony shows Dr. McDonald to be a physician who worked at the hospital where plaintiff sought medical attention. In fact, he was the specialist recommended by the emergency-care physician plaintiff first visited after the accident. The evidence does not support a conclusion otherwise.

We find that defense counsel's remarks were sufficiently prejudicial and inflammatory in character to constitute error and denied plaintiff a fair and impartial trial.

Regarding the issue of damages, plaintiff contends that the jury verdict of $98.50 is grossly inadequate.

■■ Normally, the question of damages is primarily one for the jury. (*Bernardoni v. Johnson* (1975), 28 Ill. App. 3d 726, 729, 329 N.E.2d 33, 35.) There is a lack of consistency in the reported cases on the question of inadequate verdicts in personal injury cases. But, it seems fairly well settled that a verdict in an amount less than the proved out-of-pocket expenses of plaintiff is patently inadequate. *Olson v. Fleetwood* (1969), 116 Ill. App. 2d 411, 417, 254 N.E.2d 271, 274.

In *Hong v. Williams* (1955), 6 Ill. App. 2d 456, 461, 128 N.E.2d 655, 657, the court held that a verdict for $1000 was obviously inadequate where proved out-of-pocket expenses were $1350.

In the cause before us, the record supports the contention of plaintiff that the damages are inadequate. The plaintiff's proved special damages were approximately $680. The jury returned a verdict for $98.50 in favor of plaintiff.

We hold that the jury verdict of $98.50 was palpably inadequate.

The totality of the insufficiency of the verdict coupled with the conduct of defense counsel causes us to reverse and remand for a new trial.

Reversed and remanded.

LINN and ROMITI, JJ., concur.