LEO J. CARRAHER, Plaintiff-Appellee, *v.* WALTER BACON *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 75-341

Opinion filed October 21, 1976.

Stephen J. Mrkvicka, of Matthews, Jordan, Dean, Eichmeier & Petersen, of Aurora, for appellants.

Charles L. Fierz, of Sycamore, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendants appeal from a judgment entered on a jury verdict which awarded the plaintiff $7,500 for damages suffered when plaintiff's vehicle struck the rear of a truck operated by the defendant Walter Bacon and owned by the defendant Glen Zuberbier. Defendants contend that the jury's finding of negligence is against the manifest weight of the evidence; that the plaintiff was guilty of contributory negligence as a matter of law; and alternatively that the verdict is excessive.

The charge of negligence pleaded by the plaintiff and which was submitted to the jury related to a claimed violation of section 11—1301(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—1301(a)) which provides:

> "Stopping, standing or parking outside of business or residence district. (a) Upon any highway outside a business or residence district of any city, village or incorporated town, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off such part of the roadway, but in every event an unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a

clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway."

Plaintiff testified that on October 31, 1972, at about 10 a.m. he was driving his station wagon southerly on Route 23, a four-lane highway between De Kalb and Sycamore. He was going 45-50 miles per hour in a 55-mile-per-hour zone. He said it was misty. He did not recall seeing defendant's truck prior to the accident and his first recollection was when he "came to" in the hospital.

Leland Young, a passing motorist who was acquainted with the plaintiff, testified that the accident happened within two or three cars ahead of him. He saw the plaintiff's car go into a spin and turn around and slide so that it ended up headed in the opposite direction. He said there was another car shortly behind plaintiff's car in the other lane which glanced off plaintiff's car and went across the road. He testified that the back end of the defendant's trailer was out in the road with the front end of the trailer-truck off the road. He did not testify to the distance the trailer was on the road but indicated the extent of the overhang with his hands.

Plaintiff's son who was traveling some distance behind the plaintiff for the purpose of picking him up at a place where the car was to be left for a scheduled checkup, described the weather conditions as, "Damp and misty." He said there was a long slow curve just prior to the place of the collision and that when he came around the curve the accident had already happened. He said he was first able to see the scene of the accident when he was a little over a quarter of a mile away. He saw two trucks parked. The first was completely off the road and the trailer on the truck behind was sticking out close to two feet on the road. He described the damage to the truck in ambiguous terms: "on the outside of the box about three feet up"; and in response to whether he was indicating the center of the truck, answered "Up." He said that the damage to his father's car was on the right or passenger side even with the headlight but that it was "pretty well all the way around by the time it got through."

Anna Carraher, plaintiff's daughter-in-law, testified that she passed the scene on her way to get groceries at approximately 9 o'clock prior to the accident and noticed two trucks. She said she had to go over into the other lane to go around the truck which was behind the other, that it was two or three feet over the road. She drove in the opposite direction at approximately 9:30 and saw the same truck in the same place. She could not, however, say that the truck she saw was the same truck which was involved in the accident.

An Illinois State trooper who was summoned to the scene testified that when he arrived the semi-trailer was parked on the edge of the asphalt

which tapers off to the shoulder outside the white line. He noted that the pavement was wet, that it had been raining on and off, and that it was cloudy and misty but that the visibility was relatively good. He saw marks on the pavement leading from within 10 to 12 inches from a wheel at the rear of the semi-trailer easterly towards Sycamore for approximately 200 feet. He was of the opinion that this indicated the trailer had not been moved but he could not say this definitely. He said that each lane measured 10½ feet. He estimated plaintiff's Renault car to measure 4½ feet in width. He was of the opinion that considering the curve one could have seen the truck on the edge of the road from a distance of 200 feet.

The defendant Walter Bacon testified that he had pulled off the road at 9 or 9:30 to wait his turn for a vehicle inspection across the road. When it was near his turn to get in line for the inspection he got into his truck. Another truck had pulled up ahead of him so that he had to back up to pull around. He saw plaintiff's car coming through his rear view mirror. He also saw a yellow car pull out of a driveway behind him which took the left or inside lane. Plaintiff's car proceeding in the right or outside lane struck his truck. He said that when he was struck no part of his truck or trailer was inside the white line; that prior to backing his truck it had been completely off the road and when he backed up he "probably moved the back end of the trailer over a foot." He did not measure how far his truck was over the highway either before or after the accident. He testified that the damage was to the left rear tandem and bumper of the trailer; although he later stated that the damage was to the center. He said he did not move the truck before the officer appeared on the scene and that it was not moved by the collision. He testified that the shoulder was 10 feet wide and that his truck and trailer measured approximately 7.9 feet in width.

There was also evidence that plaintiff had worked the night shift until 2:30 or 3:30 a.m. when he went home. At home he had breakfast and two cans of beer. He did not go to sleep because he was going to meet his son to take care of the car and arrived at his son's home in Sycamore at 6 or 6:30. He was at his son's house for a very short time before the accident and while there had a part of a beer.

■■ On these facts we conclude that the trial judge properly denied defendants' motions for a directed verdict and for judgment notwithstanding the verdict. Under the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)) it cannot be said that the evidence in its aspects most favorable to the plaintiff so overwhelmingly favors the defendants that no contrary verdict based on the evidence could stand. We also conclude that the verdict is not against the manifest weight of the evidence and that therefore the trial judge properly denied

the portion of the post-trial motion which sought a new trial. See *Mizowek v. DeFranco*, 64 Ill. 2d 303 (1976); *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 509 (1967).

The record contains sufficient evidence to support the proposition that the defendant's truck was partially on the road in violation of section 11—1301(a) of the Illinois Vehicle Code. Whether it extended over the road and, if so, how much, the distance at which the plaintiff could have observed the truck, and the extent to which another lane was available were questions of fact from which the jury could determine the issue of negligence. See *Hocking v. Rehnquist*, 100 Ill. App. 2d 417, 422-23 (1968).

The same tests, of course, apply to the question whether the plaintiff was guilty of contributory negligence. (See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 503, 510 (1967).) The defendants' argument that the plaintiff was guilty of contributory negligence as a matter of law is based upon the reasoning that plaintiff's view was unobstructed for at least 200 feet from the accident and there was another lane available for plaintiff to have traveled to avoid the accident. We cannot say, however, that there is no reasonable inference which could be drawn from the evidence to justify plaintiff's conduct as free from negligence. (See *Eichorn v. Olson*, 32 Ill. App. 3d 587, 590 (1975). *Cf. Calvetti v. Seipp*, 37 Ill. 2d 596 (1967).) To the contrary, reasonable inferences may be drawn from the evidence in this record from which a jury could conclude that plaintiff was driving at a reasonable speed; that defendant's truck backed up so as to partially obstruct one lane of the highway; that the presence of the car in the other lane made it unavailable to the plaintiff under the circumstances; and that plaintiff applied his brakes to avoid a collision when the obstruction became visible. The fact that the contrary inferences could as readily be drawn from the evidence makes the case particularly one in which the questions of negligence and contributory negligence should be decided by the jury. There is contradictory testimony as to the extent vision was obstructed, as to plaintiff's speed, whether or not the truck was in the same position before the accident as after. The damage to the truck in any event is inconclusive on the issues before the jury.

■■ The defendants also challenge the verdict as excessive. They particularly note that no testimony was offered by the plaintiff to show the value of the automobile, which was demolished, under a complaint that included property damage as well as personal injury. We agree that the testimony of the diminution in value is essential to recover the property damage. See *Lucas v. Bowman Dairy Co.*, 50 Ill. App. 2d 413, 416 (1964).

There is, however, ample evidence in the record to support the general verdict on the basis of plaintiff's personal injuries, loss of work and pain and suffering. The amount of the verdict is largely within the discretion of

the jury. (*Lau v. West Towns Bus Co.*, 16 Ill. 2d 442, 452 (1959).) Courts test the excessiveness of the jury verdict by questioning "Whether or not the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience." (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.*, 35 Ill. App. 3d 1001, 1030 (1976).) The verdict is well within limits in our view.

The judgment is therefore affirmed.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.